IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

Mark McCoy,                          )
                                     )
                    Petitioner,      )      C.A. No. 4:16-0638-HMH-TER
                                     )
        vs.                          )      **OPINION & ORDER**
                                     )
Warden Cartledge,                    )
                                     )
                    Respondent.      )

        This matter is before the court with the Report and Recommendation of United States

Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b) and Local

Civil Rule 73.02 of the District of South Carolina.[1]  Mark McCoy ("McCoy") is a pro se state

prisoner seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  In his Report and

Recommendation, Magistrate Judge Rogers recommends granting Respondent's motion for

summary judgment and dismissing McCoy's petition without an evidentiary hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

        McCoy is currently incarcerated at the Broad River Correctional Institution, a South

Carolina Department of Corrections facility.  In September 2008, McCoy was indicted in South

Carolina state court on charges of murder and possession of a firearm during the commission of a

violent crime.  (Mem. Supp. Mot. Summ. J. Ex. 3 (App'x 604-05), ECF No. 14-3.)  After a jury

---

[1] The recommendation has no presumptive weight, and the responsibility for making a
final determination remains with the United States District Court.  See Mathews v. Weber, 423
U.S. 261, 270 (1976).  The court is charged with making a de novo determination of those
portions of the Report and Recommendation to which specific objection is made.  The court may
accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge
or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

trial, McCoy was found guilty on September 25, 2008.  (Id. Ex. 1 (App'x 211), ECF No. 14-1.)

McCoy was sentenced to life imprisonment for murder and five years' imprisonment for the

possession of a firearm, to be served consecutively.  (Id. Ex. 1 (App'x 227), ECF No. 14-1.)

McCoy appealed his conviction on October 21, 2008.  (Id. Ex. 6 (Notice of Appeal), ECF

No. 14-6.)  The South Carolina Court of Appeals affirmed McCoy's conviction on June 8, 2011.

(Id. Ex. 9 (Court of Appeals Order), ECF No. 14-9.)  On June 5, 2012, McCoy filed an

application for post-conviction relief ("PCR") raising the following grounds:

1. Ineffective assistance of counsel:
    a. "[F]ailure to continue his objection to the false material evidence being used by the solicitor; that counsel previously objected to."
    b. "[F]ailure to request trial judge to instruct jury on the lesser included offense of voluntary manslaughter."
    c. "[F]ailure to object to trial judge's instruction to the jury to find applicant guilty of the charge."
2. Prosecutorial misconduct:
    a. Violation of Brady v. Maryland, 373 U.S. 83 (1963).
    b. "Material evidence suppressed by prosecution."
3. Due Process violations:
    a. "[W]hen the Magistrate Judge issued arrest warrant based on information that never existed for probable cause."
    b. "[A]s a result of prosecutorial misconduct by Solicitor Fant, Special Agent, and Police withholding crucial prosecution's witnesses statements of facts
    . . . ."
    c. "[V]iolated by Solicitor Fant's misconduct making promise and favor (agreements) within the criminal justice system with crucial witness and not correcting her false information to the jurors (solicitors)."
    d. "[A]s a result of the misconduct by the solicitor, in regard of suppressing evidence that was material, before and during applicant's trial thus the material evidence exposes solicitor deliberately allowing [or] overlooking false testimony from crucial federal inmate witnesses along with solicitor misleading court and juror's with false information herself."
    e. "[V]iolated by the trial judge's erroneous instruction to find the applicant guilty, even if the evidence does not convince the jury."

2

(Mem. Supp. Mot. Summ. J. Ex. 3 (App'x 588), ECF No. 14-3.)  An evidentiary hearing was held on February 27, 2014.  (Id. Ex. 2 (App'x 454), ECF No. 14-2.)  On May 23, 2014, the PCR court denied McCoy's PCR application.  (Id. Ex. 3 (App'x 587), ECF No. 14-3.)  McCoy filed a petition for a writ of certiorari with the South Carolina Supreme Court on March 25, 2014.  (Id. Ex. 12 (Pet. for Writ of Cert.), ECF No. 14-12.)  On February 12, 2015, the South Carolina Supreme Court denied the petition for writ of certiorari.  (Id. Ex. 15 (Feb. 10, 2014 Order), ECF No. 14-15.)

McCoy, acting pro se, filed the instant § 2254 petition on February 24, 2016,[2] raising due process and ineffective assistance of counsel claims.  (§ 2254 Pet., ECF No. 1.)  On May 2, 2016, Respondent filed a motion for summary judgment.  (Mot. Summ. J., ECF No. 28.)  On August 22, 2016, McCoy responded.  (Resp. Opp. Summ. J., ECF No. 29.)  Respondent replied on September 1, 2016.  (Reply, ECF No. 30.)  On October 21, 2016, Magistrate Judge Rogers recommended granting Respondent's motion for summary judgment and denying McCoy's petition. (Report & Recommendation, ECF No. 31.)  McCoy timely filed objections on November 15, 2016.[3]  (Objs., ECF No. 38.)  Respondent filed a response on December 2, 2016. (Resp. Opp'n Objs., ECF No. 41.)  This matter is now ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

---

[2]  Houston v. Lack, 487 U.S. 266 (1988).

[3]  Id.

3

Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."  Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

### B.  Standard of Review in a § 2254 Petition

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254.  Under § 2254(d),

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

4

> decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," McCoy has "the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1). With respect to reviewing the state court's application of federal law, "'a federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id. (quoting Williams, 529 U.S. at 410). "Thus, to grant [McCoy's] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).

### C. Objections

McCoy filed objections to the Report and Recommendation. Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). Upon review, the court finds that many of

5

McCoy's objections are non-specific, unrelated to the dispositive portions of the magistrate judge's Report and Recommendation, or merely restate his claims. However, the court was able to glean several specific objections. McCoy objects that the magistrate judge erred by (1) giving deference to the state court's legal conclusions, (2) finding that the PCR court did not err in concluding that McCoy failed to demonstrate prosecutorial misconduct, and (3) finding that McCoy's counsel was not ineffective for failing to request a jury charge for voluntary manslaughter.

### 1. Magistrate Judge's Deference to State Court

McCoy objects that the magistrate judge erred in affording deference to the state court's legal conclusions rather than limiting deference to the state court's factual determinations. (Objs. 2-3, ECF No. 38.) As a result, McCoy argues that the magistrate judge erred in concluding that he failed to demonstrate prosecutorial misconduct by way of a Brady violation. (Id.)

The PCR court's factual determination regarding credibility is entitled to deference in this action. Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1) ("for a federal habeas court to overturn a state court's judgments, the state court's error must be stark and clear")); see also Marshall v. Lonberger, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). However, "'[s]ection 2254(d) requires [federal courts] to give state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law as

determined by the Supreme Court of the United States' that prevails." <u>Williams v. Taylor</u>, 529 U.S. 362, 384 (2000) (quoting <u>Lindh v. Murphy</u>, 96 F.3d 856, 869 (7th Cir. 1996)).

In the instant case, the magistrate judge conducted the analysis required by § 2254(d). The magistrate judge properly granted deference to the PCR courts' credibility determinations of witnesses and found that McCoy failed to demonstrate that the PCR court's legal conclusions were an unreasonable application of federal law. Therefore, McCoy's objection is without merit.

## 2. Prosecutorial Misconduct

McCoy objects that the magistrate judge erred by concluding that the PCR court's finding that the state did not commit prosecutorial misconduct and <u>Brady</u> violations[4] was not an unreasonable application of federal law. McCoy argues that the state failed to disclose: (1) prior witness statements from Kimberly Delay ("Delay"); (2) a plea agreement wherein Delay agreed to testify in exchange for unrelated charges being dismissed;[5] (3) an agreement between the state and Lattimore Holmes ("Holmes"), which resulted in Holmes receiving a downward departure on his federal convictions[6] in exchange for Holmes' testimony against McCoy; and (4) prior

---

[4] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

[5] At the time of McCoy's trial, Delay had pending state charges for larceny, trafficking in cocaine, possession of cocaine, and possession of marijuana. (Mem. Supp. Mot. Summ. J. Ex. 2 (App'x 344), ECF No. 14-2.) Additionally, Delay had pending federal charges for conspiracy to possess with intent to distribute cocaine base and possession with intent to distribute cocaine. <u>See United States v. McCoy</u>, Cr. No. 3:08-cr-0007-CAR-CHW. McCoy alleges that Delay's state charges were dropped as a part of a plea agreement with the state. (Objs. 3-7, ECF No. 38.)

[6] On March 27, 2006, Holmes was convicted of intentionally and unlawfully possessing with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and sentenced to 60 months' imprisonment. <u>See United States v. Holmes</u>, Cr. No. 3:05-cr-559-MJP-1. On November 20, 2008, Holmes received a downward departure which reduced his federal sentence to time served. (Mem. Supp. Mot. Summ. J. Ex. 2 (App'x 326), ECF No. 14-2.)

7

statements from Holmes.  (Objs. 3-7, ECF No. 38.)  McCoy argues that each of these issues were critical to his conviction and would have changed the outcome of his trial.  (Id., ECF No. 38.)

### a. Delay's Withheld Statements

McCoy argues that the magistrate judge incorrectly found that the PCR court did not err by finding that McCoy was not prejudiced by the withholding of several of Delay's statements. McCoy argues that Delay's withheld statements, which consisted of two interviews with the police wherein Delay stated that she did not know anything about the shooting McCoy was accused of committing, contradict Delay's trial testimony wherein Delay testified that McCoy changed into camouflage clothes, left for 3-5 minutes, and returned out of breath.  (Id. Ex. 3 (App'x 598), ECF No. 14-3.)  The PCR court found that no Brady violation occurred because the trial court conducted an *in camera* inspection of the state's entire investigation file prior to trial and found that the state had met its discovery obligations, and McCoy's counsel was able to adequately cross-examine Delay without the withheld statements.  (Mem. Supp. Mot. Summ. J. Ex. 3 (App'x 598-601), ECF No. 14-3.)  McCoy argues that because Delay's withheld statements had some impeachment value, withholding the statements is a Brady violation and undermines his conviction.  (Objs. 4, ECF No. 38.)

"A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused."  Youngblood v. West Virginia, 547 U.S. 867, 869 (2006) (per curiam). "[E]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Id. at 870 (internal quotation marks omitted).  A Brady violation will result in the reversal of a conviction upon a "showing that the favorable evidence could reasonably be taken to put the whole case in such a

different light as to undermine confidence in the verdict." Id. (internal quotation marks omitted). "To establish that a *Brady* violation undermines a conviction, a convicted defendant must make each of three showings:  (1) the evidence at issue is 'favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the State suppressed the evidence, 'either willfully or inadvertently'; and (3) 'prejudice . . . ensued.'"  Skinner v. Switzer, 562 U.S. 521, 536 (2011) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).

The PCR court conducted the required analysis and found that the state did not suppress Delay's statement because the state's entire investigation file, including Delay's withheld statements, were submitted to the trial court for an *in camera* inspection.  (Mem. Supp. Mot. Summ. J. Ex. 3 (App'x 598-599), ECF No. 14-3.)  Similarly, the PCR court's analysis found that McCoy was not prejudiced by withholding Delay's statement because McCoy's counsel was able to adequately cross-examine Delay.  (Id. Ex. 3 (App'x 599), ECF No. 14-3.)  McCoy's argument that withholding a statement that has *any* possible impeachment value requires a reversal is contrary to existing Supreme Court precedent.  Further, McCoy has failed to demonstrate that the PCR court's finding was contrary to or an unreasonable application of federal law.  Based on the foregoing, the magistrate judge's finding that the PCR court did not err by finding that McCoy was not prejudiced by the withholding of several of Delay's statements.  Therefore, McCoy's objection is without merit.

**b.  Delay's Alleged Plea Agreement**

McCoy argues that the magistrate judge erred in concluding that the PCR court properly found that Delay was never offered any benefit for her testimony.  McCoy argues that a series of

letters between Delay's assistant federal public defender ("AFPD")[7] and the assistant solicitor, Catherine Fant ("Fant"), demonstrate that there was a promise to dismiss charges against Delay in exchange for her testimony against McCoy.  (Objs. 3-4, 7-8, Ex. 1, ECF Nos. 38 & 38-1.)

The first letter, from Delay's AFPD to Fant, states in relevant part:

> We spoke several months ago as you were preparing for murder trial against Mark McCoy.  My client, Kim Delay, ultimately became a witness for the state in that trial and you were able to obtain and [sic] conviction and life sentence against Mark McCoy.  At that time, you indicated to me that all of Ms. Delay's pending South Carolina charges would be dismissed in return for her cooperation and testimony in the McCoy trial.

(Mem. Supp. Mot. Summ. J. Ex. 2 (App'x 344), ECF No. 14-2.)  In reply, Fant responded:

> I have received your letter regarding Kim Delay and although I am inclined to dismissed [sic] the charges still pending against her . . . I cannot do so at the present time.
>
> Unfortunately, Kim's actions and refusal to testify against Mark McCoy in Georgia signal a potential change of heart that could affect my homicide case in the event of an appellate reversal.  For this reason, I feel I must wait until McCoy's appeals are exhausted before dismissing any charges against Kim.

(Objs. Ex. 1 (Oct. 13, 2009 Letter), ECF No. 38-1.)  During McCoy's PCR hearing, the assistant solicitor testified about the exchange of letters, stating:

> MS. FANT:  How that came about, there was no deal with Kimberly Delay.  We were not going to give her [a] deal, because she had never told what had happened. The – when she met with Detective Eugene Williams at the Sumter Police Department, she said she basically didn't know what had happened on the day of the murder.  And she stuck with that, until we were notified right before the trial by the federal authorities, that she wanted to testify.
>
> Mr. Wilder had asked me about a deal for her, and I specially told him we would give her a deal.

---

[7]  Delay's AFPD did not represent Delay on any state charges and wrote to the assistant solicitor only in regard to Delay's sentencing for unrelated federal charges.  (Mem. Supp. Mot. Summ. J. Ex. 2 (App'x 344), ECF No. 14-2.)

MR. BROOKS: Mr. Wilder, as in Arthur Wilder?

MS. FANT: As in Arthur Wilder, who was her attorney, on two separate state charges that she had. And he was her attorney for both of them. He wanted her to cooperate, and he had asked me several times about it. And the problem was she wasn't cooperating at that point. So there was absolutely no agreement for her. I understand that the letter that Ms. Leek sent, mentioned that I had agreed to dismiss the charges, but that is not correct.

What I had agreed to do was, we . . . would reconsider everything if she testifies, after she testifies, we will see where we are. It's important to note that because the – I did not in fact dismiss the charges against Ms. Delay. Except there was one – the one case. . . . I did [nol pros] that on October the 20th 2008. That was after Mr. McCoy's trial, but it had nothing to do with that. It was because, and it's written right on the front of the trial [folder]. She had – she was going federal. She had a federal case going. Standard procedure in the solicitor's office that we just didn't bother to go forward prosecuting cases that the feds had an involvement in, because we know that she was going to be punished there.

. . .

The second case did not get dismissed until May 14th of 2010. And what happened then was, Mr. Wilder came to me and said, what are you going to do with this case. And I said, well, I don't know yet. We are still pondering what we are going to do with it. He certainly did not say you agreed to dismiss it if she testified, because obviously you know Mr. Wilder. He would have been on my case every day of the week, all day, until I dismissed it if there had been any agreement on that. Instead what he told me was that . . . there was some hang up between her being held on her federal charges and they would not let her start her, I believe, either her probationary sentence on . . . her federal charges, because she had state charges pending.

And at that point, she had been held since September 2008, when she testified, to May 14th of 2010. Over a year and a half basically, which is more punishment [than] she would have gotten on the drug charges. And so, at that point, . . . as a fairness issue, I dismissed it because that case had not been indicted. I dismissed with leave to restore. That is written right on the front of the file; letting him know that this was a dismissal because she was in the predicament she was in. I didn't think it was fair she was doing time, without actually having a sentence on those charges, and that if decided that we would pick it back up. But there was [no] deal in that regard.

11

(Mem. Supp. Mot. Summ. J. Ex. 3 (App'x 554-57), ECF No. 14-3.)  The PCR court found Fant's

testimony credible.  (Id. Ex. 3 (600-01), ECF No. 14-3.)  The PCR court's factual determination

regarding credibility is entitled to deference.  Cagle, 520 F.3d at 324.  McCoy has failed to

present clear and convincing evidence to demonstrate that the PCR court's factual conclusions

were incorrect.  Thus, the magistrate judge correctly found that the PCR court did not err by

finding that Delay did not receive a plea agreement.  Therefore, McCoy's objection is without

merit.

### c.  Holmes' Downward Departure

McCoy argues that the magistrate judge erred in finding the PCR court's conclusion that

the state did not provide a benefit to Holmes for his testimony was a correct and an reasonable

application of federal law.  McCoy argues that Holmes' sentencing transcript demonstrates that

Holmes received a downward departure on his federal sentence in exchange for his testimony.

(Objs. 3-4, ECF No. 38.)  Holmes' sentencing transcript provides in relevant part as follows:

> [Assistant United States Attorney]: . . . Mr. Holmes said, "I have information
> regarding the murder that was committed by [McCoy] and I believe that
> authorities would be interested in that information."
>
> So not knowing the value of it, I passed in on to ATF . . . who followed up and
> who brought the information that Mr. Holmes provided to the attention of the
> state authorities.
>
> The Sumter County Solicitor's Office, based upon hearing that, got a writ and
> used Mr. Holmes at the trial of [McCoy].  Catherine Fant was the assistant
> solicitor in that case.  I asked her to prepare a summary of Mr. Holmes' testimony
> and its value in those proceedings.
>
> . . .
>
> As the court has observed from this letter, Mr. Holmes was a really critical
> witness for the state.

12

. . .

> [H]e was the only eyewitness.  I remember the days that Mr. Rogers and I were in state court, and some of the evidence that they would have in cases.  But he was obviously a very important witness against a very dangerous individual.  As a result of that, [McCoy] received a sentence of life plus five years.
>
> So based on that and that alone, I sought authority from my office, and received authority, to recommend that Mr. Holmes' sentence be cut in half; basically from 60 months to 30 months.

(Mem. Supp. Mot. Summ. J. Ex. 2 (App'x 402-03), ECF No. 14-2.)  In regard to Holmes' downward departure, the PCR court stated that "[i]t is true that Holmes did receive a downward departure because of his cooperation in [McCoy's] case; however, there is no evidence that the State sponsored that downward departure."  (Mem. Supp. Mot. Summ. J. Ex. 3 (App'x 602), ECF No. 14-3.)  Nothing in the record demonstrates that the PCR court's conclusion was incorrect.  Therefore, the magistrate judge correctly found that the PCR court's conclusions were objectively reasonable.  As a result, McCoy's argument is without merit.

### d.  Holmes' Withheld Statements

McCoy argues that the magistrate judge erred in finding that the PCR court's conclusion that the state did not violate Brady by failing to disclose a statement Holmes gave to police investigators was a correct and reasonable application of federal law.  The statement, which appears to be an investigative summary prepared by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") on January 25, 2008, states that, while McCoy was assaulting the victim, the victim "got in a hit on McCoy."  (Mem. Supp. Mot. Summ. J. Ex. 2 (App'x 339), ECF No. 14-2.)  McCoy argues that, had he known about Holmes' statement, he would have pursued a voluntary manslaughter defense because the statement demonstrates mutual combat.

(Objs. 4, ECF No. 38.)  Therefore, McCoy argues that failing to disclose Holmes' statement

violated <u>Brady</u> because it materially altered the outcome of his trial.  (<u>Id.</u>, ECF No. 38.)

>  In regard to Holmes' statement, the PCR court stated
>
> > [t]his statement, if in writing or otherwise summarized, would have been in Judge
> > King's possession during his *in camera* review, so it is clear that there was no
> > <u>Brady</u> violation for the State failing to turn it over.  Further, the trial transcript
> > reveals that trial counsel was aware of a statement Holmes gave in January 2008,
> > as counsel cross-examined Holmes about the statement (see page 232 ROA).

(Mem. Supp. Mot. Summ. J. Ex. 3 (App'x 602), ECF No. 14-3.)  Similarly, McCoy's counsel

testified during McCoy's PCR hearing that he believed he had seen Holmes' ATF summary:

> [Counsel]:  The cross examination of Mr. Holmes indicates that I did get the
> statement, because their – the nature of my questions indicate that I gave a
> statement.  You know, those FBI, 301 form and the way they are written and how
> they use their language source and stuff like that.  But the pattern of questions that
> I asked would indicate to me, Mr. Brooks, that I did have a statement.
>
> . . .
>
> MR. BROOKS:  In the cross examination phase of Mr. Lattimore Holmes that
> Mr. Gourley showed you on the record on appeal in the transcript, you answered
> earlier that that must have indicated that you had that prior statement of Lattimore
> Holmes?
>
> [Counsel]: That indicated to me that I either had this statement or I had knowledge
> of the statement.  Because you see I made reference to the date of January.  I made
> reference to the year.  And I made – if you show it to me again, I can point out the
> different things that they are indicia of the fact that I must have had some
> knowledge that the statement existed.
>
> In addition, if you look at cross examination questions, would indicate that I had
> some indication.  And you'd also see there was effective cross examination of
> him.

(<u>Id.</u> Ex. 3 (App'x 537-38), ECF No. 14-3.)

McCoy has failed to provide evidence that Holmes' statement was withheld or that he was prejudiced by the alleged withholding. Based on the foregoing, the magistrate judge correctly found that the PCR court's finding that Holmes' statement was not withheld and that McCoy did not suffer prejudice was objectively reasonable. As a result, McCoy's argument is without merit.

### 3. Ineffective Assistance of Counsel

McCoy objects that the magistrate judge erred in finding his counsel was not ineffective for failing to ask for a jury charge including voluntary manslaughter and not objecting to the trial court's failure to charge the jury on voluntary manslaughter. (Objs. 5-7, 9, ECF No. 38.) In order to successfully challenge a conviction or sentence on the basis of ineffective assistance of counsel, McCoy must demonstrate that his counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by his counsel's deficient performance. See Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In order to prove prejudice, McCoy must "show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Id. At 694.

McCoy's counsel testified at McCoy's hearing that he did not pursue a voluntary manslaughter charge

> [b]ecause one strategy is that you go with the single charge of murder. And you worry about giving them a jury charge of voluntary manslaughter, because they

might compromise on you; that they can't prove the case of murder, but he did something wrong, therefore, we will go with voluntary manslaughter.

(Mem. Supp. Mot. Summ. J. Ex. 3 (App'x 527), ECF No. 14-3.) The PCR court found that McCoy's counsel articulated valid reasons for his trial strategy, stating:

This Court notes [McCoy's] trial theory was that he was not present at the scene and had no part in the crime at all. [McCoy] reasserted this argument during the PCR evidentiary hearing. Requesting a voluntary manslaughter option would be in direct contradiction to [McCoy's] purported trial strategy. This Court finds Counsel's strategic decision in not requesting a voluntary manslaughter option proper.

(Id. Ex. 3 (App'x 597), ECF No. 14-3.) "Judicial scrutiny of counsel's performance must be highly deferential . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "In deciding whether to request [a lesser-included-offense] instruction, defense counsel must make a strategic choice: giving the instruction may decrease the chance that the jury will convict for the greater offense, but it also may decrease the chance of an outright acquittal." United States v. Estrada-Fernandez, 150 F.3d 491, 496 (5th Cir. 1998) (quoting United States v. Dingle, 114 F.3d 307, 313 (D.C. Cir. 1997)). "Standing alone, unsuccessful trial tactics neither constitute prejudice nor definitively prove ineffective professional assistance." Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995).

McCoy's counsel articulated a valid trial strategy for not seeking a voluntary manslaughter charge. Upon review, the court finds that McCoy has not demonstrated that the PCR court's decision was incorrect or objectively unreasonable. Thus, the magistrate judge did

16

not err in finding that the PCR court's decision was a correct and reasonable application of federal law.  Therefore McCoy's objection is without merit.

After a thorough review of the Report and Recommendation and the record in this case, the court adopts Magistrate Judge Roger's Report and Recommendation and incorporates it herein.  Based on the foregoing, the court grants Respondent's motion for summary judgment and dismisses McCoy's habeas petition with prejudice.

It is therefore

**ORDERED** that Respondent's motion for summary judgment, docket number 15, is granted and that McCoy's § 2254 petition, docket number 1, is dismissed without an evidentiary hearing.  It is further

**ORDERED** that a certificate of appealability is denied because McCoy has failed to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
December 15, 2016

**NOTICE OF RIGHT TO APPEAL**

The Petitioner is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

17